## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.  22-77 |
| | ) | |
| v. | ) | |
| TERRY TABOR, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

I.     Introduction

Defendant Terry Tabor ("Tabor"), through counsel, filed a motion to suppress evidence obtained pursuant to an anticipatory search warrant[1] (ECF No. 37).  Tabor argues that the warrant was conditioned on a "triggering event" that did not occur.  Tabor also argues that the warrant was overbroad.  The government filed a response in opposition to the motion (ECF No. 41).  The government filed a supplemental response (ECF No. 48), pursuant to the court's order, to address the overbreadth argument.

Tabor did not request an evidentiary hearing.  The government argued that the motion should be resolved without an evidentiary hearing because there are no material factual disputes. For the purpose of resolving the motion to suppress, the court will assume the facts as set forth by Tabor.  *See United States v. Persinger*, 284 F. App'x 885, 887 (3d Cir. 2008) (evidentiary hearing not needed where court accepted defendant's version of events for the purpose of ruling on his motion to suppress).  The court concludes that an evidentiary hearing is not warranted. *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) ("A motion to suppress requires an

---

[1] An anticipatory search warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006)

evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress.") (citations omitted).  The motion is ripe for disposition.


II.     Factual and Procedural Background

Tabor is charged in the indictment at Criminal Number 22-77 with possession with intent to distribute 500 grams or more of methamphetamine and 500 grams or more of cocaine, on February 22, 2022 (ECF No. 3).

As set forth in Tabor's motion, United States Postal Inspector Candace McMurtrie ("McMurtrie") obtained a parcel search warrant after a CLEAR database search and a canine alert. Agents found 1.3 pounds of cocaine inside the parcel, substituted a sham substance and tracking device, and sought an anticipatory search warrant for the residence in the town of Indiana, Pennsylvania labeled as the parcel's destination (the "residence" or the "Target Location").  Agents conducted no physical investigation at the residence.  (ECF No. 37 at 1-3).

McMurtrie drafted an affidavit in support of an application for an anticipatory search warrant at the residence (ECF No. 37-3).  McMurtrie sought a warrant to search for and seize evidence, instrumentalities, contraband and fruits of violations of drug distribution, unlawful use of communication facility, and drug conspiracy from the residence.  *Id.* ¶ 4.  The Target Location included outbuildings, sheds, garages and curtilage.  *Id.* ¶ 21 & Attachment A.  The affidavit set forth, based on McMurtrie's training and experience, the kinds of drug-related evidence typically recovered from the residences of drug traffickers, including controlled substances, paraphernalia, books and records, personal papers, cash and financial statements, travel documents, electronic

devices, firearms, photographs and identity documents. *Id.* ¶¶ 6-7. The affidavit explained how each of these categories of evidence related to illegal drug activity. *Id.* ¶¶ 8-18. Attachment B to the affidavit set forth the Items to be Searched and Seized.

The key dispute in the pending motion involves the "triggering event." The affidavit explained that agents would attempt a controlled delivery of the parcel to the residence on February 22, 2022. The affidavit stated, in relevant part:

25. . . . If the Subject Parcel is accepted **by an occupant** of the residence and taken inside, your Affiant is requesting an anticipatory search warrant for the residence be granted.

26. **The Triggering Event for execution of the anticipatory search warrant will be the Subject Parcel being taken inside the residence at [    ], Indiana, PA 15701**.

(emphasis added in ¶ 25; emphasis in original in ¶ 26).

Tabor did not attach the actual search warrant to his motion to suppress, but the government provided it (ECF No. 41-1). A United States magistrate judge granted the application and issued an anticipatory search warrant at 9:00 a.m. on February 22, 2022. The anticipatory search warrant described the "triggering event" as follows:

> I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property UPON OCCURRENCE OF THE FOLLOWING CONDITION(S) ...
>
> The United States Postal Service Priority Mail Express parcel bearing tracking number EJ 959 269 066 US **being taken inside the residence** located at [the Target Location].

(ECF No. 41-1, emphasis added).[2] If the triggering event occurred, agents were authorized to search the residence, including outbuildings, sheds, garages and curtilage and to search and seize

---

[2] The statement in defense counsel's motion that the "anticipatory residential **warrant**" specified a triggering event involving an occupant of the residence is misleading and incorrect. (ECF No. 37 at 3-4, emphasis added). The document quoted in defendant's motion is McMurtrie's affidavit, not the actual warrant.

the items set forth in Attachment B.  Agents were commanded to execute the warrant between

6:00 a.m. and 10:00 p.m., on or before March 8, 2022.

On February 22, 2022, after the magistrate judge issued the anticipatory search warrant,

agents deployed to the Target Location, arranged surveillance, and after no one answered the

door, left the parcel on the front porch.  (ECF No. 37 at 4).  Roughly two hours later, a van

pulled into the driveway and the landlord exited while a passenger remained in the van.  The

landlord picked up the parcel, unlocked the front door and took the parcel inside.  *Id.*[3]  Agents

deemed the triggering event to be satisfied and executed the search.  They found indicia that

Tabor resided at the Target Location in addition to controlled substances and paraphernalia.


III.    Legal Analysis

Tabor articulates the following reasons for suppression of the evidence obtained in the

search: (1) the triggering event never occurred; (2) the warrant lacked probable cause; and (3) the

warrant was overbroad.  Each of these arguments will be addressed.  The government argues that

the triggering event did occur, or in the alternative, agents acted in good faith, and that the

warrant was supported by probable cause and was not overbroad.


A. General principles of law

As an initial matter, the court recognizes that the search at issue was conducted pursuant to

an anticipatory search warrant issued by a United States magistrate judge.  A basic premise of

the search and seizure doctrine is that searches should be undertaken with judicial oversight.

*Katz v. United States*, 389 U.S. 347, 357 (1967). The court pays "great deference" to the issuing

---

[3] The defense believes the landlord arrived to conduct maintenance.  The government has refused to produce reports about the interaction between agents and the landlord.  (ECF No. 37 at 4 n.4).

judge's initial determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  This

court's role is limited to ensuring that the issuing judge had a "substantial basis" for concluding

that the affidavit supporting the warrant established probable cause. *Id.* at 236.

To establish "probable cause," the government must present evidence that "there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238

(1983). This standard is "flexible" and calls for a "practical, common-sense decision" based on

the "totality-of-the-circumstances." *Id.* at 238-39; *see Florida v. Harris*, 568 U.S. 237, 244

(2013) ("All we have required is the kind of 'fair probability' on which reasonable and prudent

people, not legal technicians, act ... We have rejected rigid rules, bright-line tests, and

mechanistic inquiries in favor of a more flexible, all-things-considered approach.").

This court must conduct "a deferential review of the initial probable cause determination

made by the magistrate."   *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).  The Third

Circuit Court of Appeals summarized the applicable legal principles in *Stearn*:

> The role of a reviewing court is not to decide probable cause de novo, but to
> determine whether "the magistrate had a substantial basis for concluding that
> probable cause existed." *Id.* at 238, 103 S. Ct. 2317 (citation and quotation omitted).

As we explained in *Jones*,

> [O]ur role is not to make our own assessment as to whether probable cause
> existed. Rather, we are constrained to determine only whether the affidavit
> provides a sufficient basis for the decision the magistrate judge actually
> made.

*Jones*, 994 F.2d at 1057. If a substantial basis exists to support the magistrate's
probable cause finding, we must uphold that finding even if a "different magistrate
judge might have found the affidavit insufficient to support a warrant." *Conley*, 4
F.3d at 1205. Although we do not merely "rubber stamp a magistrate's
conclusions," *Whitner*, 219 F.3d at 296 (citation and quotation omitted), we must
heed the Supreme Court's direction that "doubtful or marginal cases in this area
should be largely determined by the preference to be accorded to warrants." *Gates*,
462 U.S. at 237 n. 10, 103 S. Ct. 2317 (citation and quotation omitted).

5

Probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Id.* at 232, 103 S. Ct. 2317. When presented with an application for a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S. Ct. 2317. Although every affidavit ideally would contain direct evidence linking the crime with the place to be searched, a magistrate may issue a search warrant even without direct evidence. Probable cause can be, and often is, inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *Jones*, 994 F.2d at 1056 (citation and quotation omitted). Because probable cause is a "practical, nontechnical conception," we are concerned with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231, 103 S. Ct. 2317 (citation and quotation omitted).

*Stearn*, 597 F.3d at 554.

Anticipatory search warrants are constitutional.  As the Supreme Court explained in *Grubbs*, anticipatory warrants are no different in principle from ordinary warrants.  *Grubbs*, 547 U.S. at 96.  "They require the magistrate to determine (1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed."  *Id.* at 96-97 (emphasis in original).  To establish probable cause, the supporting affidavit must provide the magistrate with sufficient information to evaluate: (1) "there is a fair probability that contraband or evidence of a crime will be found in a particular place"; and (2) there is probable cause to believe the triggering condition will occur.  *Id.*

### B.  The Triggering Event

Tabor argues that the anticipatory search warrant could only be triggered if an occupant of the Target Location took the parcel into the residence.  Tabor relies on the language in ¶ 25 of McMurtrie's affidavit.  Tabor argues that the triggering condition was never satisfied because the landlord – who was not an "occupant" – took the parcel inside the home.

The government contends that the triggering event required only that the **parcel** be taken inside the home.  The government points to the language in ¶ 26 of McMurtrie's affidavit and to the language on the face of the search warrant itself.

There is a discrepancy between ¶¶ 25 and 26 of the affidavit and between ¶ 25 of the affidavit and the search warrant.  Paragraph 26 defines the "Triggering Event" as "the Subject Parcel being taken inside the residence."  In ¶ 25 of the affidavit, there is a reference to an additional condition, i.e., that an "occupant" bring the parcel inside the home.  Tabor seeks to import this more restrictive condition into the warrant, even though the face of the warrant does not require that an "occupant" take the parcel inside the residence.

The United States Court of Appeals for the Third Circuit has not directly addressed how to resolve such discrepancies.  Several other courts of appeals, including the decision relied upon by Tabor, have concluded that in the event of a discrepancy, the language in the warrant itself is controlling.  Tabor cites *United States v. Perkins*, 887 F.3d 272 (6th Cir. 2018), for the proposition that the triggering event in an anticipatory warrant must be "explicit, clear, and narrowly drawn."  *Id.* at 275.  In determining whether a triggering event has been satisfied, "warrants and their supporting documents are to be read 'not hypertechnical[ly], but in a commonsense fashion.'"  *Id.* Agents, however, cannot manipulate the triggering event after issuance of the warrant. *Id.*  In *Perkins*, the warrant specified that a parcel would be delivered "to Perkins," (i.e., the triggering event named a specific person).  *Id.* at 274.  The executing agent handed the parcel to Perkins' fiance.  The court held that the triggering event specified in the warrant (i.e., delivery to Perkins) did not occur and suppressed the evidence.

In reaching its conclusion, the court in *Perkins* distinguished the situation in *United States v. Miggins*, 302 F.3d 384 (6th Cir. 2002).  The triggering event in *Miggins* permitted a search when

7

the package was delivered and "taken by someone inside" a residence. *Id.* at 394. The executing officers observed someone inside the house come outside, receive the package and leave the premises. The court upheld the search and rejected the argument that the triggering event was not satisfied because the delivery should have occurred while the person remained inside the home. *Id.* at 395-96.

In *Perkins*, the court affirmed that the triggering event does not have to identify a specific person to provide probable cause for a search. The court observed:

> Sometimes the government ties the triggering event to a specific person. *E.g., Gendron*, 18 F.3d at 966 (requiring "receipt by Daniel Gendron"); *Ricciardelli*, 998 F.2d at 9 (requiring "receipt by Steven L. Ricciardelli"). And sometimes the government does not. *E.g., Grubbs*, 547 U.S. at 92, 126 S.Ct. 1494 (requiring "recei[pt] by a person[ ]"); *Miggins*, 302 F.3d at 394 (requiring that package be "taken by someone").

*Perkins*, 887 F.3d at 276. The court concluded that the triggering event set forth in the warrant was controlling and explained:

> We cannot substitute a more broadly phrased triggering condition—e.g., "delivery to anybody inside the residence with apparent authority to accept delivery"—after the fact. Even if this phrase might have been sufficient to persuade a neutral magistrate that there was probable cause to search, the actual triggering condition authorized a search "only" upon delivery to Perkins.
>
> In other words, law enforcement needs to say what it means and mean what it says when proposing a triggering condition as part of an anticipatory warrant. *See Miggins*, 302 F.3d at 395 (requiring that triggering conditions be "explicit, clear, and narrowly drawn" (quoting *Ricciardelli*, 998 F.2d at 12) ). If law enforcement believes that a broadly phrased triggering condition would suffice to establish probable cause in any particular case, an affiant can draft that condition for the magistrate's approval.

*Id.* at 277. In *Grubbs*, the triggering event was defined in the affidavit as: "the parcel has been received by a person(s) and has been physically taken into the residence." *Grubbs*, 547 U.S. at 92. The Supreme Court held that this triggering event "would plainly establish probable cause for the search." *Id.* at 97.

8

In *United States v. Brown*, 929 F.3d 1030 (8th Cir. 2019), the court upheld an anticipatory search warrant under factually similar circumstances. Postal inspectors intercepted a package containing a large amount of methamphetamine. The agent prepared an affidavit to obtain a search warrant that stated that officers would deliver the package "only to an adult willing to accept delivery." *Id.* at 1038. The warrant itself contained no such condition, but specified that the triggering event would be met once "[a]n adult subject transport[ed] some or all of the methamphetamine inside the target address." *Id.* at 1035. In executing the controlled delivery, agents left the parcel by the front door, observed someone open the door several times to look at the package, saw a person pick up the package and take it into the house, but within two minutes saw the parcel placed back outside on the doorstep. After the search, agents learned that the occupants had written "Return to Sender" on the parcel. *Id.* The defendant argued that the affidavit and warrant should be read together and that the triggering event included a condition which was not met, i.e., that the parcel be delivered to an adult willing to accept delivery. *Id.* at 1038. The court upheld the search and concluded that the agents acted in good faith reliance on the text of the warrant itself, which specified only that the methamphetamine be taken inside the residence – "an act which all parties agree occurred." *Id. Accord United States v. Johnson*, No. 19-CR-4065-LTS-KEM, 2020 WL 7685939, at *11 (N.D. Iowa Nov. 10, 2020), report and recommendation adopted, No. CR19-4065-LTS, 2020 WL 7312181 (N.D. Iowa Dec. 11, 2020) (upholding search where "additional triggering events set forth in the affidavit (as opposed to the warrant itself) failed to occur.").

In this case, the warrant is similar to those upheld in *Grubbs*, 547 U.S. at 92 (requiring "recei[pt] by a person[ ]"), and *Miggins*, 302 F.3d at 394 (requiring that package be "taken by someone"). The triggering event approved by the magistrate judge required only that the parcel

be taken inside the house.  The warrant is broader than ¶ 25 of the affidavit because the magistrate judge did not impose the additional condition that the action be taken inside by an occupant.  The triggering condition for execution of the warrant was met.[4]  It is undisputed that the parcel was taken into the Target Location, albeit by the landlord.  In sum, Tabor's contention that the evidence should be suppressed due to a failure of the triggering event is without merit.

### C.  Probable Cause

Tabor argues that the affidavit was conclusory and did not establish probable cause for the search (ECF No. 37 at 12-14).[5]  The court concludes that the affidavit established probable cause for the search of the Target Location.  In *Brown*, the court held "use of the mail system to deliver illegal drugs to a specific address provided sufficient evidence to support issuance of an anticipatory warrant to search the target residence."  *Brown*, 929 F.3d at 1038.  In *United States v. Walker*, 324 F.3d 1032, 1038 (8th Cir. 2003), the court rejected the argument that the presence of narcotics in the Express Mail package was insufficient to provide probable cause to search the entire home without independent or corroborating evidence to suggest that illegal evidence was likely to be found.

In this case, in addition to the large quantity of cocaine in the parcel itself, McMurtrie's affidavit provided additional supporting information to the magistrate judge.   The name of the sender of the parcel did not associate with the address listed on the parcel; based on McMurtrie's experience, drug shippers often use false names.  The name of the recipient listed on the parcel, Sheena Gibson, did associate with the Target Location and a criminal record check revealed that

---

[4] The court need not reach the government's alternative argument that the agents acted in good faith.
[5] Tabor states that a "question not yet ripe for challenge" is whether McMurtrie knew that Sheena Gibson was incarcerated during the timeframe of the investigation.  (ECF No. 37 at 13 n.7)

she had several prior drug-related convictions.  In sum, there was probable cause to support the search, particularly in light of the deferential review of the magistrate judge's determination that must be conducted under *Stearn*, 597 F.3d at 554.

### D.  Overbreadth

Tabor contends that the warrant permitted limitless discretion to the executing agents and constituted an unconstitutional "general warrant" because it fails to satisfy the "particularity" requirement of the Fourth Amendment.   Tabor objects to the list in Attachment B, and in particular, to the search for electronic evidence, i.e., computers and cell phones.

In *United States v. Christine*, 687 F.2d 749 (3d Cir. 1982), the Third Circuit Court of Appeals explained:

> A general warrant is a warrant that authorizes "a general exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The Fourth Amendment seeks to prevent general warrants by requiring all warrants to contain a "particular description" of the things to be seized. The particularity requirement "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

*Id.* at 752–53.  The constitutional flaw of a general warrant is that it vests the searching agents, rather than the judicial officer, with discretion to decide what to seize.  In *Christine*, the court held that warrant at issue, which directed officers to seize "all folders . . . all checks . . . all general ledgers (and) all correspondence," was not a general warrant because it did not vest the officers with unbridled discretion to rummage. *Id.*  The court explained:  "By directing the searching officers to seize all of these items, the magistrate, rather than the officer, determined what was to be seized."  *Id.*

The court concludes that the warrant at issue in this case is not a "general warrant." The agents did not have unbridled discretion to conduct a general rummaging of Tabor's possessions at the Target Location. Instead, as in *Christine*, the agents were instructed to seize only the evidence that fell within the enumerated categories listed in Attachment B, as authorized by the magistrate judge.

Tabor also argues that the warrant was overbroad because it permitted seizure of "anything you could find in a home" and limitless electronic searches. (ECF No. 37 at 15). A warrant is overbroad when it permits the search and seizure of items for which there is no probable cause. *United States v. Yusuf*, 461 F.3d 374, 395 (3d Cir. 2006). In *Christine*, the court explained that the scope of the search must be justified by the ambit of probable cause set forth in the search warrant affidavit. 687 F.2d at 753. Probable cause is a fluid concept that turns on the totality of the circumstances and the particular factual context. *Illinois v. Gates*, 462 U.S. 213, 230, 232 (1983). As noted above, this court performs a deferential review of the magistrate judge's probable cause determination.

In contrast to a general warrant, evidence seized pursuant to an overbroad warrant is not suppressed in its entirety. *Christine*, 687 F.2d at 754. Instead, the court must redact the search warrant, striking severable phrases and clauses that are not supported by probable cause and preserving severable phrases and clauses that satisfy the Fourth Amendment. Materials seized under the stricken clauses will be suppressed, but "the court need not suppress materials seized pursuant to the valid portions of the warrant." *Id.*[6]

In this case, McMurtrie's affidavit described suspected drug dealing at the Target Location.

---

[6] Tabor did not identify what particular evidence should be suppressed due to overbreadth. In particular, the government points out (correctly) that Tabor's objection to the scope of the electronic search is moot, because the government did not seize any phones, computers or electronic devices. *See* Inventory, ECF No. 48-2.

12

The affidavit explained, based on the agent's training and experience, why each category of material in Attachment B would be expected to be found in the residence of a drug dealer.

In *United States v. Rankin*, 442 F. Supp. 2d 225 (E.D. Pa. 2006) (involving a suspected tax evasion scheme), the court held that a similarly comprehensive search warrant was not overbroad. The court explained that the Fourth Amendment does not prohibit searches for long lists of documents if there is probable cause for each item on the list and each item is particularly described. *Id.* at 230. *Accord United States v. Am. Invs. of Pittsburgh, Inc.*, 879 F.2d 1087, 1105–06 (3d Cir. 1989) ("The fact that the warrant authorized a search for a large amount of documents and records does not necessarily render the search invalid so long as there exists a sufficient nexus between the evidence to be seized and the alleged offenses.").

The warrant issued in this case was broad, but reasonable, given the alleged illegal conduct set forth in the Affidavit. In this case, each of the enumerated categories of documents in Attachment B was particularly described. The magistrate judge had a substantial basis for concluding that there was probable cause that each category of documents would contain evidence of suspected drug dealing. *See United States v. Caple*, 403 F. App'x 656, 660 (3d Cir. 2010) (warrant not overbroad where items sought were specifically related to drug distribution business and affidavit explained how items (such as financial records) related to criminal activity).

13

IV.     Conclusion

After careful consideration of the record and relevant legal authorities, the court concludes that the motion to suppress evidence filed by Tabor (ECF No. 37) must be DENIED.  A telephone conference will be scheduled for November 10, 2022 at 2:30 p.m., to discuss the procedural status of the case.

An appropriate order will be entered.

Dated:  October 26, 2022

BY THE COURT:

/s/ *Joy Flowers Conti*
Joy Flowers Conti
Senior United States District Judge